**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

*In re J.J.F. Management Services, Inc. d/b/a Fitzgerald Auto Malls Data Breach Litigation*

Case No.: 8:25-cv-01377-PX

Honorable Paula Xinis

**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**[1]

[1] This motion requests that the Court grant preliminary approval of the proposed class action settlement and includes discussions on the Court's CAFA jurisdiction and the Court's ability to rule on this motion prior to any determination on the state plaintiff's anticipated renewed motion to remand.

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Background ..... 3

A. Litigation History ..... 3

B. CAFA Jurisdiction ..... 4

C. Mediation and Negotiations ..... 6

D. The Settlement Class ..... 8

E. Settlement Benefits ..... 8

F. The Notice Program ..... 9

G. Attorneys' Fees, Costs, & Service Awards ..... 11

H. Opt-Outs & Objections ..... 11

III. Legal Standard ..... 12

IV. Argument ..... 14

A. The Settlement Class satisfies Rule 23(a) and Rule 23(b)(3). ..... 15

B. Preliminary approval is appropriate under Rule 23(e). ..... 18

1. Class Counsel and the Plaintiffs provided adequate representation. ..... 18

2. The Settlement was negotiated at arm's length. ..... 19

3. The Settlement provides adequate relief. ..... 19

4. The Settlement treats Class Members equitably. ..... 21

C. The fairness factors from *Jiffy Lube* support preliminary approval. ..... 21

D. The adequacy factors from *Jiffy Lube* support preliminary approval. ..... 23

E. The Court should approve the Notice Program. ..... 26

V. Conclusion ..... 27

## TABLE OF AUTHORITIES

### Cases

*All. Ophthalmology, PLLC v. ECL Grp., LLC*,
No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914 (M.D.N.C. June 27, 2024) ........................ 14

*Amoche v. Guarantee Trust Life Inc. Co.*,
556 F.3d 41 (1st Cir. 2008) ........................ 4

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ........................ 22

*Boger v. Citrix Sys., Inc.*,
No. 19-cv-01234, 2023 U.S. Dist. LEXIS 16857 (D. Md. Jan. 31, 2023) ........................ 20

*Brent v. Advanced Med. Mgmt., LLC*,
No. JKB-23-3254, 2024 U.S. Dist. LEXIS 227423 (D. Md. Dec. 13, 2024) ........................ passim

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ........................ 7, 25

*Huffman v. Commscope, Inc. of N.C.*,
No. 5:23-cv-132, 2024 U.S. Dist. LEXIS 131250 (W.D.N.C. July 24, 2024) ........................ 14

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019) ........................ 16, 17

*In re Canon United States Data Breach Litig.*,
No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499 (E.D.N.Y. Aug. 5, 2024) ........................ 24, 25

*In re Center for Vein Restoration Data Breach Litigation*,
No. 8:24-cv-03593 (D. Md. Nov. 6, 2025) ........................ 14, 15

*In re Golden Corral Data Breach Litig.*,
No. 5:24-CV-00123, 2025 U.S. Dist. LEXIS 96017 (E.D.N.C. May 19, 2025) ........................ 14

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,
No. 564 F.3d 75 (1st Cir. 2009) ........................ 4

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) ........................ 21

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ........................ 13, 15, 21, 23

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ........................................................ passim

*In re Medstar Health Data Sec. Incident*,
No. 1:24-cv-01335 (D. Md. Nov. 4, 2025)........................................ 7, 14, 15, 19

*In re Onix Grp., LLC Data Breach Litig.*,
No. 23-2288, 2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024) .................. 24

*In re R&B Corp. of Va.*,
No. 4:23-cv-00066, 2025 U.S. Dist. LEXIS 17196 (E.D. Va. Jan. 29, 2025)............ 14, 15

*In re Retina Grp. of Washington Data Sec. Incident Litig.*,
No. DKC 24-0004, 2025 WL 2030241 (D. Md. July 21, 2025) ........................ 14, 15

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025)........................................................ 20, 25

*Padilla-Mangual v. Pavia Hosp.*,
516 F.3d 29 (1st Cir. 2008)........................................................ 5

**Statutes**

28 U.S.C. § 1332(d) ........................................................ 1, 4, 5

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................ passim

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)............................................ 13

WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022)........................ 12, 13, 14, 18

## I. Introduction

Plaintiffs Christopher Amrine, Alex Norwood, Kipen Henry, Kelly Frolo, and Phillip Lamb, respectfully move the Court to grant preliminary approval of the class action settlement ("Settlement") with Defendant J.J.F. Management Services, Inc., d/b/a Fitzgerald Auto Malls. The terms of the Settlement are set forth in the settlement agreement ("S.A.") which is attached as Exhibit A.[2] The Defendant does not oppose this motion.

This case arises out of a cybersecurity incident that impacted Defendant in February 2024. Plaintiffs allege that the Data Incident impacted the Personal Information of the current and former customers and employees of Defendant. In total, there are approximately 381,679 people in the Settlement Class.

As set forth below, this Court has CAFA jurisdiction and may rule on this motion prior to ruling on the state plaintiff's anticipated renewed motion to remand. Under 28 U.S.C. § 1332(d)(4), a federal court must decline jurisdiction over a class action case when more than two-thirds of the class are members of the same state as the defendant. This is not the case here. Plaintiffs have reviewed the jurisdictional discovery that Defendant provided to the state plaintiff in this case and confirmed that *less* than two-thirds of the Settlement Class Members are from Maryland. Plaintiffs further confirmed, based on Defendant's jurisdictional discovery responses, that no State is home to more than two-thirds of the Settlement Class Members. Moreover, Defendant, who has detailed information and intimate knowledge about the proposed class members, agrees that the two-thirds homes state exception does not apply. Having confirmed that this Court does not need to abstain

---

[2] Capitalized terms have the same meaning as in the Amended and Superseding Settlement Agreement.

from exercising CAFA jurisdiction over this case, there is no reason to delay ruling on this motion for preliminary approval and providing speedy relief to the Settlement Class.

The Settlement provides substantial relief to the Settlement Class—including a non-reversionary cash common fund of $2,900,000.00. ***First***, Settlement Class Members can claim up to $5,000.00 per person for documented monetary losses. ***Second***, Settlement Class Members can claim a *pro rata* cash payment estimated to be $100.00 per person. ***Third***, all Settlement Class Members can obtain three years of credit monitoring—which includes dark web monitoring, identity theft insurance coverage of $1,000,000, and identity recovery services. ***Fourth***, separate and apart from the Settlement Fund, Defendant has agreed to implement and pay for cybersecurity improvements.

Simply put, the Settlement provides the exact relief sought by the lawsuit—and satisfies the requirements for preliminary approval. Thus, Plaintiffs respectfully request that the Court enter an Order: (i) granting preliminary approval of the Settlement; (ii) preliminarily certifying the Settlement Class for settlement purposes; (iii) appointing Christopher Amrine, Alex Norwood, Kipen Henry, Kelly Frolo, and Phillip Lamb as Class Representatives; (iv) appointing Nicholas A. Migliaccio of Migliaccio & Rathod LLP, Cassandra P. Miller of Strauss Borrelli PLLC, and Jessica A. Wilkes of Federman & Sherwood as Settlement Class Counsel; (v) appointing Simpluris Inc. as Settlement Administrator; (vi) approving the proposed Notice Program; (vii) approving the form and content of the Claim Form (Ex. 1), Email Notice (Ex. 2), Long Form Notice (Ex. 3), and Postcard Notice (Ex. 4); (viii) approving the proposed Opt-Out and Objections Procedures; and (ix) scheduling a Final Approval Hearing—wherein the Court will consider final approval of the Settlement, final certification of the Settlement Class for settlement purposes, and any Motion for Attorneys' Fees, Costs, and Service Awards.

## II. Background

### A. Litigation History

Defendant owns and operates a regional automotive dealership network with approximately twenty locations across Maryland, Pennsylvania, and Florida. S.A. ¶ 1. In doing so, Defendant collects and stores the Personal Information of its current and former customers and employees (*i.e.*, the Settlement Class). *Id*. On or around February 4, 2024, an unauthorized third party allegedly gained access to the Personal Information stored by Defendant (*i.e.*, the Data Incident). *Id*. ¶ 2. Defendant then provided notice to Settlement Class Members. *Id*. ¶ 3.

Thereafter, Plaintiffs filed five (5) separate class action lawsuits against Defendant in the District Court for the District of Maryland, including the first three filed cases involving the Data Incident.[3] *Id*. ¶¶ 4–5. An additional, and later-filed, related case was filed in Montgomery County Circuit Court of Maryland.[4] *Id.* ¶ 5. That case was removed to the District Court for the District of Maryland on June 11, 2025. *Id*.

On January 8, 2026, the Court consolidated the first filed cases and appointed Nicholas A. Migliaccio of Migliaccio & Rathod LLP, Cassandra P. Miller of Strauss Borrelli PLLC, and Jessica A. Wilkes of Federman & Sherwood as Interim Class Counsel. (Dkt No. 20). The Court did not consolidate the later filed *Abraham* case, as Plaintiff Abraham – a Maryland-licensed attorney[5] – disputes the Court's jurisdiction over this matter. The Court allowed the Parties to enter into

---

[3] *Amrine v. J.J.F. Management Services, Inc.,* No. 8:25-cv-1377; *Norwood v. J.J.F. Management Services, Inc.,* No. 8:25-cv-1399; *Henry v. J.J.F. Management Services, Inc*., No. 8:25-cv-1448; *Frolo v. J.J.F. Management Services, Inc. d/b/a Fitzgerald Auto Malls,* No. 8:25-cv-1474; *Lamb v. J.J.F. Management Services, Inc.,* No. 8:25-cv-1508.

[4] *Abraham v. J.J.F. Management Services, Inc*., No. C-15-CV-25-002188.

[5] Plaintiff Abraham is the principal attorney of Cyber Law, "a 21st century law firm focused on privacy and data security." https://www.thecyberlawteam.com/about.

jurisdictional discovery to determine whether this Court must abstain from exercising its CAFA jurisdiction under the home state exception.

As set forth below, the home state exception does not apply, and this is a matter of "national or interstate interest." Therefore, neither of CAFA's abstention requirements apply. This Court has authority to consider this Motion, and, in doing so, this Court should preliminarily approve the Settlement and direct that notice be disseminated to the Settlement Class.

**B. CAFA Jurisdiction**

Congress expanded diversity jurisdiction through CAFA to allow for federal court jurisdiction over class actions satisfying the statute's amount in controversy and minimal diversity requirements.[6] 28 U.S.C. § 1332(d)(2); *see also Amoche v. Guarantee Trust Life Inc. Co.*, 556 F.3d 41, 47–48 (1st Cir. 2008). CAFA confers federal jurisdiction over putative class actions in which the putative class includes at least 100 members, at least one class member is diverse in citizenship from any defendant and the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2). But that grant of jurisdiction is subject to both discretionary and mandatory exceptions. *Id.* § 1332(d)(3)–(4).

At the January 8, 2026 hearing on Plaintiff Abraham's Motion to Remand, the Court concluded that it had subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2) but the home state exception under 28 U.S.C. § 1332(d)(4) could require that the Court abstain from exercising its jurisdiction. *January 8, 2026 Transcript*, attached as Exhibit B, p. 14. The home state exception provides in pertinent part:

[6] "Congress enacted CAFA in response to perceived abuses by plaintiffs' counsel in keeping class action cases of national importance out of the federal courts." *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 564 F.3d 75, 76 (1st Cir. 2009).

> A district court shall decline to exercise jurisdiction [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

*Id.* § 1332(d)(4)(B). This Court raised concerns that more than two-thirds of the class members may be citizens of Maryland. But that is not the case here.

Although a person's residence is not the same as their domicile, evidence of a person's place of residence is prima facie proof of their domicile. *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008). On February 19, 2026, Defendant produced a complete list of 381,679 identified class members with last known addresses; these were the same addresses that Defendant used to notify the proposed class members of the Data Breach. The Defendant similarly produced a breakdown of Class membership by state. *Class State Breakdown*, attached as Exhibit C.

Of the 381,679 individuals, 239,142 have Maryland addresses, representing 62.66% of the class. The mandatory home-state exception requires two-thirds (66.67%) or more of the class are citizens of the forum state. The statutory language is mandatory and numerical. Congress chose a bright-line rule. The record evidence demonstrates that less than two-thirds of the class are Maryland citizens. Accordingly, the home-state exception does not apply as a matter of law.

The discretionary local controversy exception also does not apply. Approximately 37.34% of the class resides outside Maryland, including substantial concentrations in Florida (15.00%), Pennsylvania (9.78%), Virginia (5.24%), and the District of Columbia (2.56%). This distribution confirms that the controversy is interstate in character and squarely within CAFA's intended scope. The Court therefore retains jurisdiction under 28 U.S.C. § 1332(d), and abstention is neither required nor appropriate.

The state plaintiff, Plaintiff Abraham, seeks to represent the same class of people[7] as defined in the Consolidated Class Action Complaint[8] and the Settlement Agreement.[9] Plaintiffs and Defendant have considered the same information that Plaintiff Abraham received through jurisdictional discovery and, as set forth above, determined that this Court has jurisdiction over this case and the proposed class. Therefore, this Court need not consider Plaintiff Abraham's anticipated renewed motion to remand before ruling on this motion for preliminary approval.

A fair and reasonable – and favorable – class action settlement is currently pending before this Court for preliminary approval. The Court should preliminarily approve the settlement without delay and allow the victims of the Data Breach – who Plaintiffs allege have on-going injuries from the Data Breach – the opportunity for relief.

### C. Mediation and Negotiations

To conserve resources, the Parties began discussing the possibility of early resolution and agreed to exchange informal discovery—including information regarding the timing and causes of the Data Incident, the scope of the Data Incident, the categories of Personal Information potentially accessed, and the approximate number of individuals affected. Joint Declaration in Support of Motion for Preliminary Approval ("Joint Decl."), ¶ 2. By exchanging informal discovery, the

---

[7] The *Abraham* complaint defines the Class as: "All persons whose Personal Information was maintained by J.J.F. Management Services Inc. d.b.a Fitzgerald Auto Malls and accessed or acquired during the cybersecurity incident discovered on or about February 4, 2024." *Abraham v. J.J.F. Management Services, Inc.*, Case No. 8:25-cv-01377-PX (D. Md.) (ECF No. 1-1, ¶ 75).

[8] The Complaint defines the Class as: "All individuals residing in the United Sates whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in April 2015." (ECF No. 14, ¶ 148).

[9] The Settlement Agreement defines the class as: "all persons residing in the United States whom Defendant identified as having Personal Information at issue in the Data Incident." (SA, ¶ 60). The "Data Incident" means the cybersecurity incident that occurred on or around February 4, 2027, and involved unauthorized access by an unknown, outside threat actor to Defendant's cyber network. *Id.* ¶ 24.

Parties obtained an objective understanding of the underlying facts. *Id.* ¶ 3. Thus, the Parties were able to carefully evaluate the strengths and weaknesses of the claims and defenses. *Id.*

Notably, informal discovery revealed that only a small fraction of this proposed Settlement Class (less than 1%) had Social Security numbers that were compromised in the Data Incident. For the vast majority of proposed Settlement Class Members, the compromised data consisted of driver's licenses. Joint Decl., ¶ 2. Unlike Social Security numbers (which are practically immutable, and which federal courts have called the "gold standard" for identity theft and fraud), driver's license numbers may be changed, and frequently change automatically as the licenses are renewed. Courts increasingly scrutinize Article III standing where only driver's license numbers are implicated. Recent Fourth Circuit precedent (*see, e.g.*, *Holmes v. Elephant Ins. Co*., 156 F.4th 413 (4th Cir. 2025)) demonstrates the potential challenges plaintiffs in data breach lawsuits involving driver's license numbers may face.

The Parties scheduled a formal mediation session with nationally known mediator and attorney Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. Joint Decl., ¶ 4. Mr. Picker has substantial experience mediating complex data breach class actions. *Id.* ¶ 5; *see also In re Medstar Health Data Sec. Incident*, No. 1:24-cv-01335, ECF No. 37, at 7, 40 (D. Md. Nov. 4, 2025) (granting final approval of data breach settlement that was mediated by Mr. Picker).

Under Mr. Picker's guidance, the Parties engaged in arm's length negotiations—wherein the Parties exchanged information, evaluated and discussed the relevant facts and law and carefully weighed the risks and uncertainties of continued litigation. Joint Decl. ¶ 6. Over the course of the mediation, the Parties discussed the relevant facts and law and advocated their positions through Mr. Picker. *Id.* Throughout the entire process, the Parties did not negotiate the proposed Service Awards until the core terms of a settlement were finalized. *Id.* ¶ 7. After numerous rounds of back-

and-forth negotiations, the Parties eventually reached an agreement on the core terms of the Settlement. *Id*. Only then were the proposed Service Awards addressed.

**D. The Settlement Class**

The Settlement Class is defined as "all persons residing in the United States whom Defendant identified as having Personal Information at issue in the Data Incident." S.A. ¶ 62. In total, there are approximately 381,679 Settlement Class Members. *Id*.

**E. Settlement Benefits**

The Settlement provides timely and tailored relief to the Settlement Class—including the non-reversionary cash common fund of $2,900,000.00 (the Settlement Fund). *Id*. ¶ 67. The Settlement Fund will pay for the following benefits. *Id*. ¶¶ 80-82.

***Cash Payment A – Documented Losses***. Settlement Class Members may receive up to $5,000.00 per person for any documented losses related to the Data Incident. *Id*. ¶ 80(a). Eligible losses include monetary losses caused by identity theft or fraud (including any resulting out-of-pocket losses such as, *inter alia*, bank fees, long-distance phone charges, postage, and travel expenses). *Id*. Eligible losses also include any out-of-pocket payments for credit monitoring or identity related services. *Id*. To be valid, Settlement Class Members must provide reasonable documentation, and the losses must have occurred after February 4, 2024 (the start of the Data Incident) and before the Claim Form Deadline. *Id*. If a Settlement Class Member fails to provide reasonable documentation, then the Settlement Administrator will notify the Settlement Class Member and provide an opportunity to cure any deficiencies. *Id*. ¶¶ 80(a), 106.

***Cash Payment B – Pro Rata Cash Payments***. In addition to Cash Payment A – Documented Losses, Settlement Class Members can claim a *pro rata* cash payment of approximately $100.00 per person. *Id*. ¶ 80(b). The value of the *pro rata* cash payment will be

increased or decreased as necessary to exhaust the entire Settlement Fund. *Id.* ¶ 81. The value of the *pro rata* cash payment will be calculated after accounting for Documented Losses, Settlement Administration Costs, Attorneys' Fees and Costs, and any Service Awards. *Id.* ¶¶ 39, 81.

***Credit Monitoring Services***. Each Settlement Class Member can obtain three (3) years of "Financial Shield Total" through CyEx which includes one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id.* ¶ 82. Settlement Class Members can obtain both credit monitoring services *and also* a cash payment (either Cash Payment A or Cash Payment B). *Id.*

***Business Practice Changes***. The Settlement also provides remedial and injunctive relief—whereby Defendant agreed to invest in cybersecurity improvements. *Id.* ¶ 83. Notably, Defendant agreed to pay for such improvements *separate and apart* from the Settlement Fund, adding further benefit to the Class Members. *Id.* Thus, the Settlement provides meaningful relief to all Settlement Class Members (regardless of whether or not a Settlement Class Member submits a claim). Joint Decl. ¶ 13.

**F. The Notice Program**

The Parties recommend that the Court appoint Simpluris, Inc. as the Settlement Administrator. S.A. ¶ 86. Simpluris, Inc. is a well-regarded Settlement Administrator and has substantial experience in administering complex data breach class action settlements. Joint Decl. ¶ 8. Under the Settlement Agreement, Simpluris, Inc. will provide direct notice to the Settlement Class pursuant to the "Notice Program." S.A. ¶¶ 86-96. If the Court grants preliminary approval, then Defendant will provide the names, email addresses, and/or postal addresses of all Settlement Class Members (i.e., the "Class List") to Simpluris, Inc. within ten (10) days of the preliminary approval order. *Id.* ¶¶ 23, 89.

Before disseminating notice, Simpluris, Inc. will establish a website (the "Settlement Website") which will provide "a means for the Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Motion for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted." *Id*. ¶¶ 22, 69, 92, 101–103. The Parties will select an appropriate URL/domain name for the Settlement Website. *Id*. ¶ 92. And Simpluris, Inc. "shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator." *Id*. Simpluris, Inc. will also establish "an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries[.]" *Id*. ¶ 88(g).

Then, Simpluris, Inc. will begin the Notice Program and disseminate notice to all Settlement Class Members within thirty (30) days of the preliminary approval order. *Id*. ¶ 90. For Settlement Class Members with a valid email address, Simpluris, Inc. will send the Email Notice (Ex. 2). *Id*. ¶¶ 30, 88. For Settlement Class Members without a valid email address, Simpluris, Inc. will send the Postcard Notice (Ex. 4). *Id*. ¶¶ 49, 88. Both the Email Notice and Postcard Notice will contain "a description of the material terms of the Settlement; a link to the Settlement Website where a Claim may be submitted or a Claim Form that can be mailed directly to the Settlement Administrator, respectively; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Motion for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the

Settlement Website address at which Settlement Class Members may access [the] Agreement and other related documents and information." *Id.* ¶ 91.

Simpluris, Inc. will send a second notice (the "Reminder Notice") by email and U.S. mail—to all Settlement Class Members who have not yet filed a claim—if the claims rate "is less than 3% of the Settlement Class, and the Parties concur that a Reminder Notice is necessary and advisable." *Id.* ¶ 57. Simply put, the proposed Notice Program satisfies the requirements of due process, the applicable rules, and aligns with the notice plans in analogous data breach class action settlements. Joint Decl. ¶ 9.

**G. Attorneys' Fees, Costs, & Service Awards**

Pursuant to the Settlement Agreement, Settlement Class Counsel will request Attorneys' Fees and Costs of up to one-third of the Settlement Fund plus reimbursement of reasonable costs and expenses. S.A. ¶¶ 117. The Settlement "is not contingent on approval of the request" for Attorneys' Fees and Costs. *Id.* ¶ 119. Additionally, Settlement Class Counsel will request Service Awards of $2,500.00 for each Class Representative "[i]n recognition of the time and effort . . . expended in pursuing this Action and in fulfilling their obligations and responsibilities[.]" *Id.* ¶ 118.

**H. Opt-Outs & Objections**

Settlement Class Members can "opt-out" (a.k.a. "exclude themselves") from the Settlement by "mailing a request to opt-out to the Settlement Administrator . . . [which] must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class." *Id.* ¶ 94. To be valid, opt-outs must be postmarked within sixty (60)

days after the Notice Date (i.e., the "Opt-Out Period"). *Id.* ¶ 45. If a Settlement Class Member does not opt-out, then they will be bound by the Settlement Agreement. *Id.* ¶ 94.

Additionally, Class Members can "object" to the Settlement by submitting an objection—specifically, the objection "must be filed with the Court and sent by U.S. Mail to Settlement Class Counsel . . . Defendant's Counsel . . . and the Settlement Administrator." *Id.* ¶ 97. The objection must include: "a. the objector's full name, mailing address, telephone number, and email address (if any); b. the case name and case number; c. all grounds for the objection, accompanied by any legal support . . . ; d. the number of times the objector has objected to a class action settlement within the five years . . . the caption of each case . . . and a copy of any orders related to or ruling upon the objector's prior objections . . . ; e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation . . . and whether they will appear that the Final Approval Hearing; f. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years . . . the caption of each case . . . and a copy of any orders . . . ; g. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); h. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and i. the objector's signature[.]" *Id.* ¶ 98. To be valid, objections must be submitted within sixty (60) days after the Notice Date (i.e., the "Objection Period"). *Id.* ¶ 44.

## III. Legal Standard

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e) ("[A] class proposed to be certified for purposes of settlement [] may be settled, voluntarily dismissed, or compromised only with the court's approval."). The approval process generally involves "three stages and two separate hearings." WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON

CLASS ACTIONS § 13:1 (6th ed. 2022) (hereinafter, "NEWBERG"); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) (hereinafter, "MANUAL") ("Review of a proposed class action settlement generally involves two hearings.").

***First***, the court holds a "preliminary approval hearing" and makes "initial determinations of the reasonableness of the settlement[.]" NEWBERG, § 13:10. As a practical matter, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction and schedule a final fairness hearing." *Id*. For guidance, Rule 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members" so long as the court "will ***likely*** be able to" grant final approval of the settlement. Fed. R. Civ. P. 23(e)(1) (emphasis added).

Thus, at the preliminary approval hearing, the court "should make a preliminary determination that the proposed class satisfies the [class action] criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." MANUAL, § 21.633. Additionally, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" *Id*. To evaluate the "fairness, reasonableness, and adequacy" of a settlement, federal courts must consider the four factors in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2)(A–D). Additionally, the Court must consider the "multifactor standards" established by the Fourth Circuit. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig*., 952 F.3d 471, 484 (4th Cir. 2020) (citing *In re Jiffy Lube Sec. Litig*., 927 F.2d 155, 159 (4th Cir. 1991)).

***Second***, after the preliminary approval hearing, courts may enter a "preliminary approval order" that "directs the parties to provide notice of the proposed settlement to the class, and sets forth a schedule for objections, opt-outs, and a final fairness hearing" and also appoints "class

counsel, class representatives, and . . . a claims administrator[.]" NEWBERG, § 13:12. Thereafter, "class members are given an opportunity to object or . . . to opt out of the settlement[.]" *Id.* § 13:10.

***Third***, the court holds a "final approval hearing" and "decides whether or not to give 'final approval' to the settlement." NEWBERG, § 13:10. At the final approval hearing, the court must make a "final determination" that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2); NEWBERG, § 13:42.

## IV. Argument

Preliminary approval is proper because the Settlement is procedurally and substantively fair, reasonable, and adequate. Joint Decl. ¶ 11. Courts in the Fourth Circuit readily grant preliminary approval—and then final approval—of analogous data breach class action settlements. *See, e.g.*, *In re Center for Vein Restoration Data Breach Litigation*, No. 8:24-cv-03593, ECF No. 57, (D. Md. Nov. 6, 2025) (granting final approval); *Medstar*, No. 1:24-cv-01335, ECF No. 40 (same); *In re Retina Grp. of Washington Data Sec. Incident Litig*., No. DKC 24-0004, 2025 WL 2030241 (D. Md. July 21, 2025) (granting final approval); *In re Golden Corral Data Breach Litig*., No. 5:24-CV-00123, 2025 U.S. Dist. LEXIS 96017, at *1 (E.D.N.C. May 19, 2025) (same); *In re R&B Corp. of Va*., No. 4:23-cv-00066, 2025 U.S. Dist. LEXIS 17196, at *13 (E.D. Va. Jan. 29, 2025) (same); *Brent v. Advanced Med. Mgmt., LLC*, No. JKB-23-3254, 2024 U.S. Dist. LEXIS 227423, at *28 (D. Md. Dec. 13, 2024) (same); *Huffman v. Commscope, Inc. of N.C.*, No. 5:23-cv-132, 2024 U.S. Dist. LEXIS 131250, at *18 (W.D.N.C. July 24, 2024) (same); *All. Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914, at *53 (M.D.N.C. June 27, 2024) (same). Here too, the Court should grant preliminary approval.

Notably, the Settlement provides monetary relief that aligns with analogous data breach class action settlements. Joint Decl. ¶ 11. Here, the Settlement establishes a $2,900,000.00 non-

reversionary common fund for approximately 381,679 Settlement Class Members. S.A. ¶¶ 62, 67. Thus, the Settlement equates to approximately $7.60 per person, before claims adjustments. Joint Decl. ¶ 12. This value aligns with other finally approved data breach class action settlements. *See, e.g., Medstar*, No. 1:24-cv-01335, ECF No. 37 at 7–10, 40 (providing $1,350,000.00 for 183,079 class members which equates to $7.37 per person); *Vein Restoration*, No. 8:24−cv−03593-DLB, ECF No. 46 at 9 (providing $3,550,000.00 for approximately 448,186 class members which equates to $7.92 per person); *Retina*, 2025 WL 2030241 (providing $3,600,000.00 for approximately 449,129 class members which equates to $8.02 per person); *Brent*, 2024 U.S. Dist. LEXIS 227423, at *7 (providing $2,500,000.00 for approximately 308,560 class members which equates to $8.10 per person); *In re R&B Corp. of Va.*, No. 4:23-cv-00066, ECF No. 64 at 4–5, 69 (providing $1,613,300.45 for 703,897 class members which equates to $2.29 per person).

As explained below, preliminary approval is warranted—and the Settlement satisfies the applicable standards of Rule 23(a), Rule 23(b)(3), the Rule 23(e)(2) analysis, the four "fairness" factors from *Jiffy Lube*, and the five "adequacy" factors from *Jiffy Lube*.[10] Joint Decl. ¶ 14. Thus, the Court should grant preliminary approval.

**A. The Settlement Class satisfies Rule 23(a) and Rule 23(b)(3).**

The Settlement Class satisfies Rule 23(a) which requires numerosity, commonality, typicality, and adequacy. Joint Decl. ¶ 15. Additionally, the Settlement Class satisfies Rule 23(b)(3) which requires predominance and superiority. *Id.* Thus, the Court should grant preliminary approval.

[10] The *Jiffy Lube* factors substantially overlap with the factors from Fed. R. Civ. P. 23(e)(2). However, for the sake of thoroughness, Plaintiffs address each set of factors. *See infra*.

***Numerosity*** is satisfied when "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). For example, in *Brent*, the court found that "the numerosity requirement is readily satisfied, given that there are over 300,000 members in the proposed Settlement Class." 2024 U.S. Dist. LEXIS 112172, at *8 (D. Md.). Here, numerosity is likewise satisfied because there are 381,679 people in the Settlement Class. S.A. ¶ 62.

***Commonality*** is satisfied when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). For example, in *Brent*, the court noted that "[c]ourts often find that this requirement is satisfied in similar data breach class actions." 2024 U.S. Dist. LEXIS 112172, at *9 (D. Md.) (citing *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558, at *11 (D. Md. July 15, 2019)). Thus, in *Brent*, the court found commonality satisfied because "common questions—which would generate common answers—include whether [defendant] had a legal duty to protect the Settlement Class Members' personal information and whether [defendant] breached that duty." *Id*. Like *Brent*, this case presents many common questions of law or fact—including whether Defendant owed a duty to Settlement Class Members; whether Defendant breached its duty; and whether Defendant failed to implement and maintain reasonable security procedures. Joint Decl. ¶ 16. Thus, commonality is satisfied.

***Typicality*** is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). For example, in *Brent*, the court found typicality satisfied because the claims of plaintiffs and class members all "arise out of the same cyberattack and involve the same legal theories." 2024 U.S. Dist. LEXIS 112172, at *9–10 (citing *Hutton*, 2019 U.S. Dist. LEXIS 120558, at *11 (D. Md.). Like *Brent*, the claims of Plaintiffs and Settlement Class Members all arise from the same Data Incident and involve the same legal

theories (e.g., negligence, breach of implied contract). *See* S.A. ¶¶ 1–5, 26; Joint Decl. ¶ 17. Thus, typicality is satisfied.

***Adequacy*** is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For example, in *Brent*, the court found adequacy satisfied because (i) there was "no conflict of interest" between plaintiffs and class members and (ii) because class counsel was "competent" and "experience[d] with class actions." 2024 U.S. Dist. LEXIS 112172, at *10–11. Like *Brent*, there is "no conflict of interest" between Plaintiffs and Settlement Class Members. Joint Decl. ¶ 18. After all, Plaintiffs have adequately represented the Settlement Class by reviewing the complaints for accuracy, meeting with Settlement Class Counsel to answer numerous questions, providing information to assist in settlement negotiations, remaining available throughout the litigation process, and reviewing the Settlement Agreement. *Id*. Additionally, the proposed Settlement Class Counsel have significant experience in complex class action litigation—and are currently litigating over one-hundred data breach class actions in courts across the country. *Id*. ¶ 19. Thus, adequacy is satisfied.

***Predominance*** is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). For example, in *Brent*, the court found predominance satisfied because "many common questions of fact and law [] arise from the alleged data breach and [defendant's] alleged conduct predominate over any individualized issues." 2024 U.S. Dist. LEXIS 112172, at *11–12 (citing *Hutton*, 2019 U.S. Dist. LEXIS 120558, at *11. Like *Brent*, many common questions of fact and law arise from the Data Incident and Defendant's alleged conduct predominate over any individualized issues. Joint Decl. ¶ 20. Thus, predominance is satisfied.

***Superiority*** is satisfied when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For example, in *Brent*, the court found superiority satisfied because the class action was "more efficient than a series of individual lawsuits." 2024 U.S. Dist. LEXIS 112172, at *12. Likewise, the Settlement is more efficient than individualized litigation by the 381,679 Settlement Class Members. Joint Decl. ¶ 21. Thus, superiority is satisfied.

In sum, the Settlement Class satisfies Rule 23(a) and Rule 23(b)(3), and preliminary approval is warranted.

**B. Preliminary approval is appropriate under Rule 23(e).**

Under Rule 23(e), courts must consider four factors when determining if a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). These factors include two "procedural factors" and two "substantive factors." NEWBERG, § 13:48. The "procedural factors" are whether "(A) the class representatives and class counsel have adequately represented the class" and "(B) the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2). The "substantive factors" are whether "(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*. Here, all four factors support preliminary approval.

**1. Class Counsel and the Plaintiffs provided adequate representation.**

The procedural factor set out by Rule 23(e)(2)(A) supports preliminary approval because Class Counsel and the Plaintiffs provided adequate representation. Joint Decl. ¶¶ 18–19. As

explained *supra*, Plaintiffs have adequately represented the Settlement Class by reviewing the complaints for accuracy, meeting with Settlement Class Counsel to answer numerous questions, providing information to assist in settlement negotiations, remaining available throughout the litigation process, and reviewing the Settlement Agreement. *Id*. Additionally, the proposed Settlement Class Counsel have significant experience in complex class action litigation—and are currently litigating over one-hundred data breach class actions in courts across the country. *Id*. Thus, this factor supports preliminary approval.

**2. The Settlement was negotiated at arm's length.**

The procedural factor set out by Rule 23(e)(2)(B) supports preliminary approval because the Settlement was negotiated at arm's length. Joint Decl. ¶ 6. The Settlement is the product of formal mediation with attorney Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. *Id*. ¶¶ 4–7. Notably, Mr. Picker has substantial experience mediating complex data breach class actions. *Id*. ¶ 5; *see also Medstar*, No. 1:24-cv-01335, ECF No. 37 at 7, 40 (D. Md.) (granting final approval of data breach settlement that was mediated by Mr. Picker). And under the guidance of Mr. Picker, the Parties engaged in extensive arm's length negotiations—wherein the Parties evaluated and discussed the relevant facts and law and carefully weighed the risks and uncertainties of continued litigation. Joint Decl. ¶ 6. Eventually, the Parties reached an agreement on the core terms of the Settlement after many rounds of back-and-forth negotiations. *Id*. ¶ 7. Thus, this factor supports preliminary approval.

**3. The Settlement provides adequate relief.**

The substantive factor Rule 23(e)(2)(C) supports preliminary approval because the relief provided by the Settlement is adequate. Joint Decl. ¶ 22. As explained above, this factor includes

four separate subfactors for the court to "tak[e] into account." *See* Rule 23(e)(2)(C). Here, three of these subfactors support preliminary approval (and one subfactor is neutral).

***First***, Rule 23(e)(2)(C)(i) supports preliminary approval because trial and/or appeal would be costly, risky, and would delay relief to Class Members. Joint Decl. ¶ 23. Indeed, Plaintiffs would face serious risks prevailing on the merits, including proving causation, as well as risks at class certification and at trial, and surviving appeal. *Id.* ¶ 24. Thus, a settlement today not only avoids the risks of continued litigation, but it also provides benefits to the Settlement Class Members now as opposed to after years of risky litigation. *Id.* ¶ 25; *see also Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (decertifying class in data breach class action). Thus, this subfactor supports preliminary approval.

***Second***, Rule 23(e)(2)(C)(ii) supports preliminary approval because the proposed methods for distributing relief and processing claims are effective. Joint Decl. ¶ 26. Here, the relief is tailored to the specific injuries that Settlement Class Members incurred (i.e., compensation for documented losses, *pro rata* cash payment, and credit monitoring). *Id.* ¶ 27. Such tailored relief is effective and aligns with the relief provided by analogous data breach class action settlements. *Id.* Thus, this subfactor supports preliminary approval.

***Third***, Rule 23(e)(2)(C)(iii) supports preliminary approval because the proposed award of attorneys' fees is reasonable. Joint Decl. ¶ 28. Here, the Settlement Agreement provides for Attorneys' Fees and Costs of up to one-third of the Settlement Fund plus reimbursement of reasonable costs and expenses. S.A. ¶¶ 117. In the Fourth Circuit, "[a] request for one-third of a settlement fund is common in this circuit and generally considered reasonable." *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234, 2023 U.S. Dist. LEXIS 16857, at *23 (D. Md. Jan. 31, 2023)

(collecting cases). Moreover, the Settlement "is not contingent on approval of the request" for Attorneys' Fees and Costs. S.A. ¶ 117. Thus, this subfactor supports preliminary approval.

***Fourth***, Rule 23(e)(2)(C)(iv) is neutral toward preliminary approval because there is no agreement that requires identification. Joint Decl. ¶ 29.

**4. The Settlement treats Class Members equitably.**

The substantive factor Rule 23(e)(2)(D) supports preliminary approval because the Settlement treats Settlement Class Members equitably. Joint Decl. ¶ 30. For example, in *Brent*, the court granted final approval when the settlement provided up to $7,500.00 per person for documented losses and a *pro rata* cash payment. 2024 U.S. Dist. LEXIS 227423, at *17 (D. Md.). Similar to *Brent*, this Settlement provides up to $5,000.00 per person for documented losses and a *pro rata* cash payment estimated to be $100.00 per person. S.A. ¶ 78; *see also In re Hudson's Bay Co. Data Sec. Incident Consumer Litig*., No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022) (granting final approval of a data breach settlement that provided compensation for documented losses and an alternative cash payment and holding that "[t]he plan of allocation compensates members of the class equitably relative to each other"). Thus, the Settlement treats Class Members equitably, and this factor supports preliminary approval.

In sum, all four factors provided by Fed. R. Civ. P. 23(e)(2) support preliminary approval—with the caveat that Rule 23(e)(2)(C)(iv) is neutral—and preliminary approval is warranted.

**C. The fairness factors from *Jiffy Lube* support preliminary approval.**

The Court must apply four factors from *Jiffy Lube* to assess the "fairness" of a settlement. *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). In *Lumber Liquidators*, the Fourth Circuit explained that "we have identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent

of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Id*. This analysis is "intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *Brent*, 2024 U.S. Dist. LEXIS 112172, at *14 (D. Md.) (quoting *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015)). As explained below, three of the fairness factors support approval (and one factor is neutral). Joint Decl. ¶ 31. Thus, on balance, the fairness factors support preliminary approval.

***First***, "the posture of the case at the time settlement was proposed" is neutral. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, the first factor was neutral because the "case was barely litigated before it went to mediation and was then quickly resolved in that forum." 2024 U.S. Dist. LEXIS 227423, at *14 (D. Md.). However, the court explained that "[w]hile the first element—the posture of the case—does not necessarily weigh in favor of the final approval of the settlement, the remaining factors do." *Id*. Like *Brent*, the first factor is neutral because the case was "quickly resolved" through formal mediation. S.A. ¶ 6.

***Second***, "the extent of discovery that had been conducted" supports preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, this factor supported preliminary approval because the parties "completed an extensive investigation and exchanged information about the number of persons allegedly impacted by the Cyberattack, the types of [personal identifiable information] accessed in the Cyberattack. and [defendant's] investigation of, and response to, the Cyberattack." 2024 U.S. Dist. LEXIS 112172, at *14–15 (D. Md.). Like *Brent*, this factor supports preliminary approval because Settlement Class Counsel engaged in extensive pre-suit discovery and the Parties exchanged informal discovery—including information regarding the timing and cause of the Data Incident, the scope of the Data Incident, the categories of Personal

Information accessed, the number of Settlement Class Members, and Defendant's investigation and response. *See* Joint Decl. ¶ 2. Thus, this factor supports preliminary approval.

***Third***, "the circumstances surrounding the negotiations" strongly support preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, this factor supported preliminary approval because "the settlement negotiations were hard-fought and conducted at arms' length" and the "settlement negotiations took place before a neutral mediator experienced in complex litigation, which further bolsters the Court's conclusion that the Settlement Agreement is fair." 2024 U.S. Dist. LEXIS 112172, at *15 (D. Md.). Like *Brent*, this factor supports preliminary approval because the Parties engaged in formal mediation with an experienced mediator (i.e., Mr. Picker of Stradley Ronon). Joint Decl. ¶¶ 4–7. And under the guidance of Mr. Picker, the Parties engaged in extensive arm's length negotiations—wherein the Parties evaluated and discussed the relevant facts and law and carefully weighed the risks and uncertainties of continued litigation. *Id*. Thus, this factor strongly supports preliminary approval.

***Fourth***, "the experience of counsel in the area of [the] class action litigation" strongly supports preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. As discussed *supra*, Settlement Class Counsel have significant experience in complex class action litigation—and are currently litigating over one-hundred data breach class actions in courts across the country. Joint Decl. ¶ 19. Thus, this factor strongly supports preliminary approval.

In sum, three of the "fairness" factors from *Jiffy Lube* support preliminary approval (and one factor is neutral). Thus, the Settlement is "fair" and preliminary approval is warranted.

### D. The adequacy factors from *Jiffy Lube* support preliminary approval.

The Court must apply five factors from *Jiffy Lube* to assess the "adequacy" of a settlement. *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). In *Lumber Liquidators*,

the Fourth Circuit explained that "we have specified the following factors for assessing [] adequacy: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Id*. As explained below, three of the adequacy factors strongly support approval (and two factors are neutral). Joint Decl. ¶ 32. Thus, on balance, the adequacy factors support preliminary approval.

***First***, the "relative strength of the plaintiffs' case on the merits" strongly supports preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, the court found that "the relative strength of the [plaintiffs'] cases . . . weigh in favor of preliminary approval . . . [given] the evolving nature of data breach litigation[.]" 2024 U.S. Dist. LEXIS 112172, at *16 (D. Md.). Like *Brent*, this case—as a data breach class action—implicates complex and evolving areas of law which may preclude success on the merits. Joint Decl. ¶ 33; *see also In re Canon United States Data Breach Litig*., No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499, at *30 (E.D.N.Y. Aug. 5, 2024) (explaining that "data breach litigation is complex and largely undeveloped"); *In re Onix Grp., LLC Data Breach Litig*., No. 23-2288, 2024 U.S. Dist. LEXIS 225686, *27 (E.D. Pa. Dec. 13, 2024) ("[T]here is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including whether Defendant owed a duty to the class to safeguard sensitive information, whether Defendant breached that duty, whether the compromised information was actually viewed by bad actors . . . whether Defendant's conduct was the proximate cause of the breach, and the extent to which the class is entitled to recovery."). Thus, this factor strongly supports preliminary approval.

***Second***, the "existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial" strongly supports preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, the court found that "the existence of defenses and of difficulties of proof weigh in favor of preliminary approval" including the "various case-dispositive defenses that [defendant] could raise, including 'whether [defendant] has a duty to protect the sensitive information belonging to Plaintiffs and the Class and whether that duty was breached when this Data Breach occurred.'" 2024 U.S. Dist. LEXIS 112172, at *16–17 (D. Md.). Like *Brent*, Defendant could raise numerous dispositive defenses—including the existence of duty, breach, causation, and damages. Joint Decl. ¶ 34. Moreover, "no data breach class action has reached the trial stage" and "the trial risk is difficult to quantify and raises the uncertainty involved in the case[.]" *In re Canon*, 2024 U.S. Dist. LEXIS 138499, at *30; *Maldini*, 140 F.4th 123 (decertifying class in data breach class action). And looming over this Data Incident litigation that primarily involved driver's license numbers is the recent Fourth Circuit *Holmes* decision, *supra*. Thus, this factor strongly supports preliminary approval.

***Third***, the "anticipated duration and expense of additional litigation" strongly support preliminary approval. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, the court found that "the anticipated duration and expense of additional litigation also weigh in favor of preliminary approval" because the "case is in its infancy, and a resolution could be years away should the case proceed." 2024 U.S. Dist. LEXIS 112172, at *17 (D. Md.). Like *Brent*, this case "is in its infancy" and additional litigation may include, *inter alia*, a motion to dismiss, fact discovery, expert discovery, motions for summary judgment, a motion for class certification, a trial, and appeal. Joint Decl. ¶ 35. Thus, this factor strongly supports preliminary approval.

***Fourth***, the "the solvency of the defendant[] and the likelihood of recovery on a litigated judgment" are neutral. *See Lumber Liquidators*, 952 F.3d at 484. For example, in *Brent*, this factor was neutral because the court "d[id] not find that the solvency of [defendant] is at issue[.]" 2024 U.S. Dist. LEXIS 112172, at *18 (D. Md.). Likewise, the solvency of Defendant is not at issue. Joint Decl. ¶ 36. Thus, this factor is neutral.

***Fifth***, the "degree of opposition to the settlement" is neutral at the preliminary approval stage. *See Lumber Liquidators*, 952 F.3d at 484. After all, the "degree of opposition" is best addressed at the final approval stage—i.e., after Settlement Class Members have been given the opportunity to object or opt-out of the Settlement. *See Brent*, 2024 U.S. Dist. LEXIS 112172, at *18 (D. Md.) ("The Court . . . will assess the degree of opposition to the Settlement Agreement at the Final Approval Hearing."). Thus, this factor is neutral.

In sum, three of the adequacy factors strongly support approval (and two factors are neutral). Thus, the Settlement is "adequate" and preliminary approval is warranted.

**E. The Court should approve the Notice Program.**

The Court should approve the proposed Notice Program—which meets, and even exceeds, the requirements of due process and the applicable rules. Joint Decl. ¶ 35. As explained above, the Notice Program is designed to provide direct notice to all Settlement Class Members. S.A. ¶¶ 42, 87–96. And the Email Notice, Postcard Notice, and Long Form Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). *See* Ex. 2, 3, 4. Furthermore, if the claims rate is below 3%, then Simpluris, Inc. may send Reminder Notices by email and U.S. mail to all Settlement Class Members who have not filed a claim. *Id.* ¶ 55. Simply put, the proposed Notice Program satisfies the requirements of due process, the applicable rules, and aligns with the notice plans in

analogous data breach class action settlements. Joint Decl. ¶ 35. Thus, the Court should approve the Notice Program.

## V. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval, preliminarily certify the Settlement Class for purposes of settlement, and enter the proposed preliminary approval order.

DATE: April 14, 2026

Respectfully submitted,

By: <u>/s/ *Nicholas A. Migliaccio*</u>
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC 20002
T: (202) 470-3520
F: (202) 800-2730
nmigliaccio@classlawdc.com

Jessica A. Wilkes*
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
jaw@federmanlaw.com

Cassandra P. Miller*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com

Zachary E. Howerton (Bar Number 20688)
**MILBERG PLLC**
223 Duke of Gloucester Street
Annapolis, MD 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235

zhowerton@milberg.com

**Pro hac vice*
*Attorneys for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATE: April 14, 2026

Respectfully submitted,

By: /s/ *Nicholas A. Migliaccio*
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC 20002
T: (202) 470-3520
F: (202) 800-2730
nmigliaccio@classlawdc.com